Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4404 | **DATE** | 11/13/2000 |
| **CASE TITLE** | Prakashchandra Shah vs. Village of Hoffman Estates, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 13 Dec. 00 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | NOV 14 2000 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |
| WAP | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 NOV 14 AM 8: 10 |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 14

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED NOV 13 2000
Judge Harry D. Leinenweber
U.S. District Court

DOCKETED NOV 14 2000

PRAKASHCHANDRA SHAH,

    Plaintiff,

v.

VILLAGE OF HOFFMAN ESTATES, a Municipal Corporation, VILLAGE OF HOFFMAN ESTATES POLICE DEPARTMENT, and VILLAGE OF HOFFMAN ESTATES POLICE DEPARTMENT OFFICERS GERLACH AND EGGERS,

    Defendants.

Case No. 00 C 4404

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff, Prakashchandra Shah ("Shah"), brings this action against the Defendants, Village of Hoffman Estates, the Village of Hoffman Estates Police Department, and Village of Hoffman Estates Police Department Officers Gerlach and Eggers, pursuant to 42 U.S.C. § 1983 alleging violation of his rights under the Fourth Amendment, violation of his right to equal protection, violation of his right to privacy, and for unlawful imprisonment. Before the Court is Defendants' motion to dismiss Shah's complaint pursuant to FED. R. CIV. P. 12(b)(6).

### BACKGROUND

The following facts are taken from Shah's complaint and are taken as true for the purposes of this motion. On January 23, 1999, Village of Hoffman Estates Police Officers Gerlach and Eggers



performed a computerized check on Shah's license plate number. Based on the information obtained from the search, the Officers stopped Shah's vehicle at or near Route 72 and Barrington Road in Hoffman Estates, Illinois. (Compl., ¶ 9). Officer Gerlach issued Shah a traffic citation that Shah was later found not guilty of after a hearing. (Compl., ¶ 10). Although Shah has attached a transcript of that hearing to his response to the motion to dismiss, the Court has not considered the transcript and declines to convert this motion to dismiss into a motion for summary judgment. FED. R. CIV. P. 12(b).

Shah alleges that the Defendants justify such computerized searches of license plate numbers as fair, proper, and lawful because such searches are claimed to be conducted on a random basis. (Compl., ¶ 13). This "random basis" standard for police action allows the police officers to choose vehicles upon with to conduct informational searches according to "each individual officer's sole and unbridled discretion, without the requirement that the officers have a reasonable and articulable suspicion of unlawful conduct on the part of the motorist." (Compl., ¶ 14). Shah further alleges that "such basis for making traffic stops is an accepted practice" of the Hoffman Estates Police Department. (Compl., ¶ 12). Shah alleges that as a result of the lack of a formal policy, officers employ their personal standards in making such choices "introducing the likelihood - if not the inevitability

of stereotypical attitudes, whether conscious or unconscious" being applied in the application of police power. (Compl., ¶ 15). Shah further alleges that this practice causes the police power of Hoffman Estates to be used "in a discriminatory manner inasmuch as there exists no mechanism to ensure that the targets of such action are not chosen according to a host of undisclosed reasons, such as color or shade of skin, length of hair, type of clothing, or year and make of car." (Compl., ¶ 16). Shah alleges that this system lends itself to a "system of profiling against various classifications of people" and that statistically members of minority groups are subject to such stops on a disproportionate basis. (Compl., ¶¶ 17, 18).

## DISCUSSION

When considering whether to dismiss a complaint pursuant to Rule 12(b)(6), the Court takes the allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 930 (7th Cir. 1998). The Court will dismiss the complaint only if it appears that plaintiff can prove no set of facts that would entitle him to relief. *Id.*

### Immunity

Qualified immunity shields state actors from monetary damages resulting from liability for constitutional violations if their conduct does not violate "clearly established constitutional rights

of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, the court determines whether the complaint states a cause of action for violation of constitutional rights that were clearly established when the alleged violation occurred. *Kitzman-Kelley v. Warner*, 203 F.3d 454, 457 (7th Cir. 2000), *citing County of Sacramento v. Lewis*, 523 U.S. 833 (1998). If the constitutional rights were clearly established, qualified immunity is not applicable.

The clearly established right required for qualified immunity must "be one established in a particularized sense," and officers "may be protected from liability for objectively reasonable decisions, even if wrong." *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999). The inquiry, thus, "focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Sledd v. Linsday*, 102 F.3d 282, 287 (7th Cir. 1996). As such, "qualified immunity is not forfeited unless 'no reasonable officer could have mistakenly believed that the conduct was unlawful." *Saffell*, 183 F.3d at 658, *citing Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988).

Officers Gerlach and Eggers argue that they are entitled to qualified immunity because their conduct did not violate clearly established constitutional rights. The Court agrees. It was not clearly established at the time that the Officers stopped Shah that

it was unconstitutional for police officers to perform a computer search based on their discretion and then to pull a car over based on information obtained from the computer search that the owner of the vehicle had a suspended license. In fact, existing case law on this very question indicated to them it was constitutional. *See People v. Barnes*, 152 Ill. App.3d 1004, 505 N.E.2d 427 (4th Dist. 1987)(holding that it is appropriate for a police officer to stop a vehicle and investigate the driving status of the driver based on information, that was obtained from a computer search, that the owner of the vehicle had a suspended driver's license.)

Shah argues that at the time that the Officers ran the computer search and later pulled him over, they "knew that probable cause did not exist [so] they ran the computer check to see if they could find a justification for stopping the plaintiff's car." Shah further argues that *Barnes* is of "questionable constitutionality." (Shah's Resp. at 13). Shah's arguments regarding the lack of probable cause are misplaced, as the standard for pulling over a car is an "articulable basis amounting to reasonable suspicion that the driver is unlicenced or his vehicle unregistered," *see Delaware v. Prouse*, 440 U.S. 648, 661 (1979), not the higher standard of probable cause. Shah's arguments regarding the "questionable constitutionality" of *Barnes* is also not persuasive, as state employees are not required to do exhaustive legal research, and Shah has acknowledged that Illinois law gives the officers

- 5 -

discretion to choose which license plates to run. (See Shah's Resp., at 4). Shah has not pointed to any cases indicating that the Officers violated a clearly established right, and thus qualified immunity is appropriate.

## Municipal Liability

Defendants also argue that the Village of Hoffman Estates should be dismissed because Shah has failed to allege that the Officers acted pursuant to an official custom, policy, or practice. Municipalities may be liable under 42 U.S.C. § 1983 if an action pursuant to an official policy or custom of the municipality causes a constitutional tort. *Monell v. New York City Dept. Social Servs.*, 436 U.S. 658, 690-91 (1978). Three types of municipal policy variants implicate § 1983 when constitutional rights are violated: (1) an express policy, (2) a widespread practice that, although not authorized by written law or express municipal policy is so permanent and well settled as to constitute custom or usage with the force of law, and (3) actions of a person with final policy making authority. *Looper Maintenance Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1999). Further, a plaintiff in a § 1983 case against a municipality is required only to comply with the conventional standards of notice pleading and is not required to meet any heightened pleading standard. *Leatherman v. Tarran County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165 (1993).

Defendants rightly assert that Shah does not assert the first and third types of policy variants in his complaint. Shah relies on the second type of policy variant, and he argues that while the Village does not have an express policy, the Village not only allows but actively supports the use of computer searches to discriminate against minorities. (Shah's Resp., at 12). Shah alleges that these discriminatory practices are "accepted practice[s]" of the Hoffman Estates Police Department. (Compl., ¶ 12). Shah further alleges that statistically, minorities are subject to stops on a disproportionate basis, and that this "random basis" policy condoned by the Police Department leads to discrimination. (Compl., ¶¶ 13, 18). Recognizing that on a Rule 12(b)(6) motion to dismiss, a plaintiff must be allowed to proceed with a case if relief could be granted under any set of facts that the plaintiff could prove consistent with the complaint, *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), the Court finds that at this early juncture Shah's pleadings are sufficient.

The Defendants also move to dismiss the Village of Hoffman Estates Police Department as a defendant because it is not a separate suable entity. The Hoffman Estates Police Department, as Shah acknowledges in his complaint, is a department and division of the Village of Hoffman Estates and not a separate legal entity. As such, Shah's claims against the Hoffman Estates Police Department must be dismissed with prejudice. *Williams v. Hutchens*, 870 F.

Supp. 857, 860 (N.D. Ill. 1994); *Chan v. City of Chicago*, 777 F. Supp. 1437, 1442 (N.D. Ill. 1991).

**Fourth Amendment Claim**

Shah's Fourth Amendment claims are convoluted and somewhat inconsistent. The only possible Fourth Amendment claim that the Court can discern from the complaint is a claim that the officers' decision to perform the computerized search, that ultimately resulted in pulling Shah's car over, violated Shah's Fourth Amendment rights. Shah specifically argues in his response that it was the Officers' decision to perform the computerized search, not the actual stop of Shah's car, which was the "opportunity for the 'standardless and unconstrained discretion'" Shah's Resp., at 4).

This conduct would only violate the Fourth Amendment if Shah manifested a subjective expectation of privacy in the information in his license plate that society accepts as objectively reasonable. *California v. Greenwood*, 486 U.S. 35, 39 (1988). Shah has not, and cannot, allege that he has a reasonable expectation of privacy in the information on his license plate. A person does not have a reasonable expectation of privacy on matters open to public observation. *See California v. Ciaraolo*, 476 U.S. 207, 213-14 (1986). In *New York v. Class*, the Supreme Court held that a person did not have a reasonable expectation of privacy in the vehicle identification number on their car and explained that "it is

unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." 475 U.S. 106, 113 (1986). The "exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'" *Id., citing Cardwell v. Lewis,* 417 U.S. 583, 588-89 (1974). License plate numbers are intended to be in plain view, and Shah does not have any reasonable expectation of privacy regarding the information displayed on his license plate. Therefore, Shah cannot state a claim for violation of his Fourth Amendment rights.

Shah further argues that pursuant to *Delaware v. Prouse* the computer search that ultimately resulted in pulling him over violated his Fourth Amendment rights. In *Prouse,* the Supreme Court addressed whether it is an unreasonable seizure to stop an automobile, for the purpose of checking the driver's license of the operator and the registration of the car, where there is neither probable cause nor reasonable suspicion to believe that the car, driver, or occupants were in violation of the law. The Fourth Amendment was implicated in *Prouse* because "stopping an automobile and detaining its occupants constitutes a 'seizure'" within the meaning of the Fourth Amendment." 440 U.S. at 653. The Court found that the incremental contribution to highway safety of the random spot check did not justify the practice under the Fourth Amendment. Thus, the Court held that "except in those situations

in which there is at least articulable and reasonable suspicion that a motorist is unlicenced or that an automobile is not registered" stopping a car is unreasonable under the Fourth Amendment. *Id.* at 663. The Court further explained that "[t]his holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion." *Id.* at 663.

In *People v. Barnes*, 152 Ill. App. 3d 1004, 505 N.E.2d 427 (4th Dist. 1987), an Illinois Appellate court held that "it is appropriate for a police officer to stop a vehicle and investigate the driving status of the driver based on information that the owner of the vehicle has a suspended driver's license." *Id.* at 1006. The officer in *Barnes* had radioed in for a computer check of Barnes' vehicle, and the computer information indicated that the owner of the vehicle had a suspended license. The court found that it was a reasonable inference that the owner of the vehicle was driving it, and that the computer information was a sufficient articulable basis under *Terry* and *Prouse* to stop the car. *Id.* The parties have not cited any federal cases addressing this factual scenario, but several other state courts have and have also held that the information obtained about the owner of a vehicle provides a sufficient articulable basis to stop the car and further investigate. *See Montana v. Halvorson*, 997 P.2d 751, 752 (Mont.

2000); *Minnesota v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996); *State of Oregon v. Panko*, 788 P.2d 1026, 1026 (Or. Ct. App. 1990); *State of Iowa v. Mills*, 458 N.W.2d 395, 397 (Iowa Ct. App. 1990). The Court finds the reasoning in *Barnes* and these cases persuasive and finds no reason not to follow them.

The present case appears to this Court to involve a "method of spot check[ing] that involve[s] less intrusion" than the factual scenario in *Prouse*. Here, the Defendant Officers pulled Shah's car over only after they had information that the owner of the car had a suspended license, and thus the Officers had an "articulable and reasonable suspicion that a motorist was unlicensed." *Prouse*, 440 U.S. at 663. Thus, Shah has not stated a claim for violation of his Fourth Amendment rights.

### Equal Protection Claim

To establish a violation of the Equal Protection Clause, a plaintiff must demonstrate that: (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendants acted with discriminatory intent. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). In his complaint, Shah only alleges that he is a member of an unspecified "minority group," but he adds in his Response that he is a member of a number of minority groups, including East Indians, Middle Easterners, and "non-white" individuals. (Shah's Resp., at 6).

Defendants argue that Shah has not alleged that Officer Gerlach and other Hoffman Estates Officers do not initiate computer checks on the license plates of white people and that Shah's alleged statistical data, which purports to demonstrate that statistically members of minority groups are subjected to stops following licence plate checks on a disproportionate basis, is insufficient. In response, Shah argues that the issue is "whether law enforcement personnel are choosing to run a disproportionate number of electronic informational checks on non-white individuals than their numbers justify when seen in relation to the overall racial make-up of the Village of Hoffman Estates driving public." (Shah's Resp., at 7). Thus, what Shah appears to be arguing is that it is not whether similarly situated whites are being stopped at the same rate, but instead whether the police are running informational computer searches on similarly situated whites at the same rate.

In his complaint, Shah dances around the issue but plainly never alleges that the Officers involved and other officers in the police department run computer checks on a disproportionate number of minorities and that the statistics demonstrate this. Further, Shah's allegations that the Officers involved acted with discriminatory intent is also somewhat flimsy. Shah alleges mere generalities, but he never actually alleges that the Officers involved knew about his racial characteristics and intentionally

performed the computer check on his licence plate based on his racial characteristics. He alleges that the officers were allowed to use their discretion in deciding what vehicles to run the computerized search on and that this discretion "introduc[es] the likelihood -- if not the inevitability -- of stereotypical attitudes, whether conscious or unconscious, being brought to bear in the application of police power." (Compl., at ¶ 15). Shah further alleges that he was "affected" by these discriminatory practices. (Compl., at ¶ 20).

In his Response to this motion to dismiss, however, Shah alleges that the police officers "regularly choose to make a disproportionate number of computer checks on non-white driving citizens as compared to their proportion of the total driving public" and that Shah "was chosen to be stopped on the basis of his membership in the non-white group." This appears to solidify Shah's allegations that he was treated differently from members of the unprotected class and that the defendants acted with discriminatory intent. Since a plaintiff "need not put all of the essential facts in the complaint" and may add consistent additional facts in a brief in response to a motion to dismiss, the Court will consider these additional facts in Shah's response. *See Hrubec v. National Railroad Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992). Since this court cannot dismiss the complaint unless there is no set of facts upon which relief could be granted, the Court

will not dismiss the equal protection claim against the Village of Hoffman Estates at this early time. Discovery will be crucial to elucidate whether Shah has a claim here.

### Privacy Claim

In a very brief argument, Defendants move to dismiss Shah's right to privacy claim. The Court is not exactly sure what privacy rights Shah alleges were violated here, but he made the conclusory allegation that as a result of Defendants' discriminatory practices he suffered a violation of his right to privacy. In his response, Shah briefly elaborates and argues that the Officers violated his right to privacy when they pulled him over and detained him. (Shah's Resp., at 10). Shah concedes that police officers have the right to briefly detain motorists, but nonetheless asserts that when the Officers stopped him it was unlawful and violated his right to privacy. Right to privacy cases involve an individual's interest in avoiding the disclosure of personal matters and an individual's independence in making certain kinds of important decisions, like matters relating to marriage, procreation, contraception, family relationships, and education. *See Whalen v. Roe*, 97 S. Ct. 869, 876-77, nts. 25-26, 429 U.S. 602 (1977). Further, Shah does not argue that the Defendants "intruded upon his seclusion," as that term may be recognized in Illinois law, and in any event, he could not state a claim for that tort. *Schmit v. Ameritech Corp.*, 115 F.3d 501, 503 (7th Cir. 1997). *See also,*

*Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill.2d 411, 128 Ill. Dec. 542, 543, 534 N.E.2d 987, 988 (1989)(defining the tort of intrusion upon another's seclusion but reserving decision on whether the tort exists in Illinois). Thus, Shah's right to privacy claim is dismissed for failure to state a claim.

### False Imprisonment Claim

Defendants move to dismiss Shah's false imprisonment claim because "Officer Gerlach performed a valid *Terry* stop, [thus] any restraint on [Shah's] personal liberty, was a lawful restriction on his freedom of movement. (Defs.' Mem., at 9). In his three-sentence response, Shah argues simply that his "progress was obstructed, his person was detained, he was not allowed to proceed about his business." (Shah's Resp., at 11).

"False imprisonment consists of an unlawful restraint, against his will, of an individual's personal liberty or freedom of locomotion." *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994). The two essential elements of a cause of action for false imprisonment are (1) that the plaintiff was restrained or arrested by the defendant and (2) that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff. *Meerbrey v. Marshall Field and Co., Inc.*, 139 Ill.2d 455, 474, 564 N.E.2d 1222, 1231 (1990). Shah alleges that the stop was made "on the basis of information that the arresting officer, Gerlach, obtained after running a computerized check" of Shah's

license plates. Shah has not alleged that the Defendant Officers pulled him over and detained him without reasonable grounds to believe that he had committed the offense of driving with a suspended license.

## CONCLUSION

Therefore, for the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' Motion to Dismiss the constitutional claims on immunity grounds is GRANTED with respect to the Officer Defendants and DENIED with respect to the Village of Hoffman Estates.

2. Defendants' Motion to Dismiss the Village of Hoffman Estates Police Department as a non-suable entity is GRANTED with prejudice.

3. Defendants' Motion to Dismiss the Fourth Amendment claim, right to privacy claim and false imprisonment claim are GRANTED with prejudice.

4. Defendants' Motion to Dismiss Plaintiff's equal protection claim is DENIED.

**IT IS SO ORDERED.**

                                    _____
                                    Harry D. Leinenweber, Judge
                                    United States District Court

Date: November 13, 2000