Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4404 | **DATE** | 2/22/2002 |
| **CASE TITLE** | Prakashchandra Shah vs. Village of Hoffman Estates, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants the Defendant's Motion for Summary Judgment against Prakashchandra Shah's equal protection claim under 42 U.S.C. Section 1983 when defendants arrested Shah for driving on a suspended license on January 23, 1999.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 2 5 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 02 FEB 22 PM 2:33 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 22 2002

Judge Harry D. Leinenweber
U.S. District Court

PRAKASHCHANDRA SHAH,

Plaintiff,

v.

VILLAGE OF HOFFMAN ESTATES, a
Municipal Corporation; VILLAGE
OF HOFFMAN ESTATES POLICE
DEPARTMENT; and VILLAGE OF
HOFFMAN ESTATES POLICE
DEPARTMENT OFFICES GERLACH and
EGGERS,

Defendants.

Case No. 00 C 4404

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Pending before the Court is the Village of Hoffman Estates' Motion for Summary Judgment against Prakashchandra Shah's ("Shah") equal protection claim under 42 U.S.C. § 1983 when defendants arrested Shah for driving on a suspended license on January 23, 1999. Specifically at issue is Shah's contention that the Village of Hoffman Estates engaged in the practice of racial profiling when Officers Eggers and Gerlach stopped and arrested the plaintiff on Higgins Road.

### BACKGROUND

All issues arise from the January 23, 1999 arrest of Shah for driving his company car on a suspended license. Returning from picking up his daughter from college, Shah's blue Honda Passport

35

SUV was stopped at around 7:30 p.m. on Higgins Road. Shah claims that he first noticed a car driving beside him, then at times driving parallel to him for a period of about one minute before falling behind him. About five minutes later, after no apparent traffic violation, Shah noticed the MARS lights of the car behind him and pulled to the side of the road. It remains disputed whether the computer check of Shah's license plate occurred before or after pulling his car over, but upon researching the license plate number in the Illinois State Police's database, LEADS, Officers Eggers and Gerlach found Shah's driver's license was suspended.

Shah's license was suspended in either November or December of 1998 for driving under the influence of alcohol. The actual issuance of the suspension letter was not mailed until the beginning of 1999 while Shah was away for business in India. Since Shah did not return to the United States until just prior to the January 23, 1999 incident, he therefore alleged that he was unaware his license had been revoked when Officer Gerlach questioned him. Instead, Shah could only hand the officers the traffic tickets from his DUI arrest, which prompted Shah's second arrest.

While defendants state and Shah does not dispute that neither officer made any racially derogatory comments to Shah at any time, Shah argues that the officers of the Village of Hoffman Estates employed a policy a racial profiling that discriminated against

him. Shah believes that it was only after the officers drove parallel to his car and determined his race that the officers decided to run his license through the LEADS system. Shah opines that since he violated no traffic offense, the officers attempted to create a pretextual stop and fortuitously came upon his suspended license violation, when he in fact did not know his license was revoked.

Furthermore, Shah states that after the January 23, 1999 incident, officers of the Village of Hoffman Estates continued unnecessarily to stop his vehicle while his relatives drove his company car on Higgins Road. In particular, both his son, Prafik, and his niece, Pamita, were stopped by the police for no traffic violation, but solely to determine who exactly was driving the car. The officers neither issued a citation nor warning, but simply stopped the blue Honda Passport SUV only to determine whether the owner of the car was the apparent driver. Both Prafik and Pamita do not recall the exact dates or officers that accosted them, but do state that it was after the January 23, 1999 incident.

## **ISSUE**

In essence, the primary issue is whether the Village of Hoffman Estates engaged in the practice of stopping and detaining Shah's vehicle based on his race without legally sufficient cause or justification. Shah claims that the Village of Hoffman Estates condoned the practice of racial profiling by allowing or failing to

intervene when the officers continuously stopped his automobile on the Higgins Road. Therefore, in violation of 42 U.S.C. § 1983, Shah asserts that the Village of Hoffman Estates deprived him of his constitutionally recognized right to equal protection.

On the other hand, Defendant counters that due to Shah's license suspension, the stops were not pretextual and therefore not in violation of Shah's § 1983 claim to constitutional deprivation. The Village argues that police computer searches are solely within the discretion of the officers, albeit confined to officially recognized parameters by the police department, where the officers receive extensive training with particular emphasis on the issue of race and police stops.

Shah originally filed his complaint against Officers Eggers and Gerlach, the Village of Hoffman Estates Police Department and the Village of Hoffman Estates. In addition, Shah alleges a Fourth Amendment right to privacy and false imprisonment. In a Rule 12(b)(6) motion, the Court dismissed plaintiff's claims against the officers on the grounds of immunity, and dismissed the claims against the Village of Hoffman Estates Police Department as being the same essential entity as the Village of Hoffman Estates. The Court also dismissed plaintiff's Fourth Amendment claims, but upheld Shah's constitutional claims of equal protection violations against the Village of Hoffman Estates.

Thus, the Village of Hoffman Estates now brings their Motion for Summary Judgment with reference to Shah's complaint of defendant's deprivation of his constitutional right to equal protection under 42 U.S.C. § 1983.

**DISCUSSION**

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, the evidence must create more than "'some metaphysical doubt as to the material facts.'. . . [As] a mere scintilla of evidence in support of the nonmovant's position is insufficient . . . [A] party will be successful in opposing [the motion] only when it presents 'definite, competent evidence to rebut the motion.'" *Albiero v. City of Kankakee* 246 F.3d 927, 932 (2001) citing *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000); see also, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-257 (1986). Overall, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial. *Mechning v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988).

In 42 U.S.C. § 1983 cases, to prove a claim against a public entity the plaintiff must demonstrate that (1) he has suffered the deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or practice of the public entity. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 687, 694 (1978). To evidence a policy, custom or practice, plaintiff must show either (1) an express policy; (2) a widespread practice or custom; or (3) an act or acts of a person with final policymaking authority. *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). In addition, such actions and deprivation must fall under the pretext or "badge of authority" by state actors acting under the color of state law. *Payne v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1999).

To establish an equal protection violation, the plaintiff must prove that the actions of the Village of Hoffman Estates had not only (1) a discriminatory effect on Shah, but also that the Village was (2) motivated by a discriminatory purpose. *Chavez v. Illinois State Police*, 251 F.3d 612, 635-636 (7th Cir. 2001). In the instant case, Shah has failed to demonstrate the two elements necessary to prove a § 1983 violation of equal protection.

### Discriminatory Effect

To prove discriminatory effect, Shah must show that (1) he is a member of a protected class; (2) he is otherwise similarly situated to members of the unprotected class; and (3) Shah was

- 6 -

treated differently from members of the unprotected class. *Id.* at 636. As an East Indian, Shah obviously meets the first criterion, yet it is the second and third criteria where Shah fails.

Shah argues that he and his family members were subject to "pre-stop profiling," when the officers of the Village of Hoffman Estates constantly detained his blue Honda Passport SUV for no apparent traffic violation. *Chavez* 251 F.3d at 622. To demonstrate his apparent disparate treatment, he avers that the police stops of his blue Honda Passport SUV were different from those members of the entire driving population as a whole.

Unfortunately, Shah has not produced evidence to support his contentions. Shah has not yet identified similarly situated members of the unprotected class who were treated differently. While defendants incorrectly categorized Shah's comparisons as those of others with suspended licenses, Shah's constitutionally protected status stems from his ethnicity, not license status. Yet, Shah's comparison of his "pre-stop profiling" to those of the entire driving population is futile in that Shah has not specifically identified any non-minority member who was treated differently. Shah only details the actions committed against his family and kin as a separate class, not against the East Indian population of the Village of Hoffman Estates, or the entire minority population as a whole.

## Discriminatory Purpose

To prove discriminatory purpose, plaintiff must demonstrate that the decision makers acted with discriminatory intent. *Chavez* 251 F.3d at 645 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)(citations omitted). This circular reasoning, in effect, results in the burden being both high and vague. Discriminatory purpose implies that the person of decision making authority acted or reaffirmed a particular course of action that had, at least in part, averse effects upon a protected group. *McCleskey* 481 U.S. at 298. In essence, the air of racial animus must become palpable.

The recent Seventh Circuit decision in *Chavez* is particularly demonstrative. *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001). Chavez was the class leader on behalf of all African-American and Hispanic motorists asserting civil rights claims in violation of § 1983 when the Illinois State Police allegedly stopped and detained minority motorists based on their race without legally sufficient justification pursuant to Operation Valkyrie. Operation Valkyrie was to target specifically motorists used to transport drugs or contraband on the Illinois highways. Operation Valkyrie granted troopers substantial discretion to decide which motorists to stop and search. The Illinois State Police acknowledged that a great deal of discretion can deteriorate into abusive practices, including racial discrimination. *Id.*

The class action suit was in reaction to the apprehension of George Koutsakis, ironically a white man, stopped, detained and then arrested after exceeding the sixty-five mile-per-hour speed limit. Ultimately, Koutsakis's automobile was suspected of carrying drugs due to the California plates of his rental car, which contained a mobile phone, fast food wrappers and maps strewn in the car seat. A drug-detecting canine alerted to the possibility of contraband, which was then seized. The public defenders office wanted to test whether Operation Valkyrie was detaining motorists based on race, thus planted Chavez, a Hispanic, in the exact similar circumstance as Koutsakis, minus the contraband. In addition, Katherine Austin, a white, female from the Public Defenders' Office, followed closely behind in a separate car.

Upon following Chavez for approximately twenty-four miles, Trooper Thomas pulled Chavez over for no apparent driving violation. After a thirty-five to fifty-five minute detention, including the use of drug-detaining canine, Thomas found no contraband and released him. Thomas completed the field report, but listed Chavez as "white" despite the fact that the report contained a listing for Hispanic. The difference between "field reports" and "citations" are important here, in that all "citations" are recorded, while "field reports" are randomly filed. Those "field reports" utilizing canine units or other back-up

assistance are registered, while those "field reports" of motorists detained, then released are haphazardly filed.

The seminal significance of the *Chavez* decision was its reference to the use of statistics to prove the requisite discriminatory intent. The Seventh Circuit held that statics could be one element to prove discriminatory intent, but due to the lack of information on all field reports filed of the entire driving population of Illinois, the regressions and statistical analysis proffered by Chavez was incomplete, thus not accurate enough to prove discriminatory intent.

In the instant case, defendants state that Shah has failed to demonstrate the requisite discriminatory intent of either Officers Eggers or Gerlach because Shah admits that neither officer made any racially derogatory comments during the stop. In addition, defendants aver that the LEADS system does not categorize race, but only recounts certain facts such as the name of vehicle's registrant, address where registered, expiration, owner's driver's license number, status of whether the car is stolen or suspected in a crime, warrants for owner's arrest, or license suspensions, therefore could not be found to employ discriminatory intent.

Shah counters that it was the defendants' actions of pulling parallel to Shah's car, then five minutes later pulling Shah over to the side of the road that are the indicia of discriminatory

intent. Defendants scoff at Shah's recollection as mere speculations.

In response, defendants cite to November 13, 1991, General Order No. 75 of the Illinois State Police policy of prohibiting officers from discriminating based upon a person's gender, race, or ethnicity. The Village also points to the August 1998, bulletin on "Professional Traffic Stops vs. Biased Traffic Stops" which clearly articulates the police department's policy of not using or condoning "race or socio-economic guidelines as grounds for pulling a motorist over."

However, in motions for summary judgment all inferences must be drawn in favor of the non-moving party, namely Shah. Unfortunately, even if one is to view the facts in light most favorable of Shah, FED R. CIV. P. 56(c) requires that there be a question of *material* fact at issue, otherwise the moving party is entitled to a judgment as a matter of law. The law on discriminatory intent requires tangible proof of actions which were adverse to the protected party. Thus, the Village's racial animus or intent can only be judged through its actions. Even though the Village proffers peripheral explanations to justify its actions, Shah has not proved the necessary discriminatory purpose or intent. Shah sets forth no numerical statics for comparison, but only eludes to the general driving public as its sampling pool. If *Chavez*, a deliberate example utilized to demonstrate racial

profiling, failed to prove pre-stop profiling by the use of statical data, then Shah's lack of any data cannot prove deliberate racial profiling.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment against Prakashchandra Shah's equal protection claim under 42 U.S.C. § 1983 when defendants arrested Shah for driving on a suspended license on January 23, 1999.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: February 22, 2002